JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Hartents Spencer, appeals the decision of the trial court which overruled her objections and adopted the decision of the magistrate recommending that her complaint for divorce be dismissed. For the reasons set forth below, we reverse the decision of the trial court and remand this matter for further proceedings consistent with this opinion.
 {¶ 2} On August 2, 1999, the plaintiff-appellant, Hartents Spencer ("Spencer"), filed a complaint for divorce in the Cuyahoga County Court of Common Pleas, Division of Domestic Relations. The matter came to be heard on April 11, 2001 with the sole issue being whether a valid common law marriage existed between Spencer and Sam Harmon ("Harmon"). Harmon, who failed to appear at trial, denied the parties ever possessed the present intent to enter into a common law marriage.
 {¶ 3} Spencer and Harmon began living together and publically referring to each other as husband and wife on August 2, 1989. The parties resided in a home which was owned by Spencer prior to 1989. At the time the couple began living together, unbeknownst to Spencer, Harmon was still legally married to another women. Spencer testified that Harmon had advised her he was already divorced, that he expressed his belief that he and Spencer were married and a ceremonial marriage and marriage certificate were unnecessary because "it was just a piece of paper."
 {¶ 4} The facts presented indicate that in July 1990, Harmon was legally divorced, thus any legal impediment to a marriage to Spencer disappeared. From that moment until sometime in 1997, Spencer and Harmon resided together and held themselves out to the public as a married couple. The parties filed joint income tax returns for the years 1993-1996. At one point, Spencer attempted to have Harmon placed on her health insurance policy as her husband. In addition, the parties acquired rental property, funded by Spencer, which they then renovated and leased.
 {¶ 5} In 1997, their relationship began to deteriorate. During this time, Harmon secured Spencer's release of her ownership interest in the rental properties. According to Spencer, she relinquished her interest in the properties, which she had purchased, as a result of her emotional and physical debilitation and duress.
 {¶ 6} Spencer filed for divorce in August 1999. Harmon answered the complaint denying that there was ever an intent to hold themselves out as a married couple, and the trial court adopted the magistrate's recommendation to dismiss Spencer's divorce petition. The appellant now appeals the decision of the trial court and asserts the following sole assignment of error.
 {¶ 7} "I. The Court erred in adopting The Magistrate's decision and dismissing the complaint for divorce where the uncontroverted evidence established that a common law marriage between the parties commenced on August 2, 1989."
 {¶ 8} For purposes of review, an appeal from the domestic relations courts must be viewed under an abuse of discretion standard. The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983)5 Ohio St.3d 217, 219.
 {¶ 9} Common law marriages have been prohibited in Ohio since October 10, 1991. However, R.C. 3105.12(B) provides that a common law marriage which came into existence before October 10, 1991 remains valid after that date.
 {¶ 10} The concept of common law marriage was adopted by American law from England. "Under English law, there were two methods of contracting a common law, or non-ceremonial marriage. By the first of these, sponsalia per verbe de praesenti, the consent of the parties expressed in words of present mutual acceptance constituted an actual and legal marriage. Clark, The Law of Domestic Relations in the United States (2 Ed. 1988) 45, Section 2.4. This definition, with some modifications, is primarily used in the United States and is the basis of our review."Hatfield v. Hatfield (Jan. 11, 1995), Gallia App. No. 94 CA 07.
 {¶ 11} In Nestor v. Nestor (1984), 15 Ohio St.3d 143, the Supreme Court of Ohio set out the required elements necessary to establish the existence of a common law marriage: (1) an agreement to marry in praesenti by parties competent to contract; (2) cohabitation as husband and wife; (3) parties must hold themselves out as husband and wife, and (4) the parties are treated and reputed as husband and wife by the community. The court in Nestor further concluded that each element must be established by clear and convincing evidence. Id. at 146.
 {¶ 12} The first element of the test, a meeting of the minds to marry in praesenti, is the essential element of the common law marriage. "Its absence precludes the establishment of such a relationship even though the parties live together and openly engage in cohabitation * * *"Nestor, supra at 146. "An agreement to marry in praesenti may be proven either by direct evidence which establishes agreement, or by proof of cohabitation, acts, declarations, and conduct of the parties and their recognized status in the community in which they reside." Id. The inference raised from cohabitation and community reputation is given more or less strength according to the circumstances of the particular case at bar. The inference is also strengthened when taking into consideration the period of time the couple is living together and cohabiting as man and wife. Id.
 {¶ 13} The evidence presented at trial in the instant case included the direct testimony of six witnesses for the appellant. The appellant first called Charlotte McCornell to the stand. McCornell testified that she had first met Hartents Spencer and Sam E. Harmon in 1993 when she was inquiring about a house they had for rent. McCornell stated that during her relationship with Spencer and Harmon, they always referred to each other as husband and wife and never anything else.
 {¶ 14} The appellant then called Barbara Moorehouse, who stated that she was first introduced to Sam Harmon in 1995 when she, too, was renting a house from the couple. During this period of time Harmon always referred to Spencer as his wife. Moorehouse further stated that Harmon always said: "Pay the rent to my wife," referring to Spencer.
 {¶ 15} Dorothy Burton was next to testify on behalf of the appellant. She stated that she first met Spencer and Harmon in 1996 when they were renovating the house next to Burton's house. Burton stated that Harmon referred to Spencer as his wife in front of Burton and her family the entire time they worked on the house next door.
 {¶ 16} James Stone was then called to testify. Stone has been acquainted with Spencer for over 30 years and was first introduced to Harmon in 1989 by Spencer. Stone testified that Spencer and Harmon gave a party at their house and at that party, a girl asked Harmon how to turn off the stereo. Harmon answered, referring to Spencer, "My wife is upstairs, go get her, have her come down." Stone then asked Spencer "When did you get married, I thought I was going to give you away." Spencer responded by saying, "Well, don't worry about it. You'll have another chance some day."
 {¶ 17} Stone had, on another occasion, gone to a bowling alley with Harmon. Harmon purchased two bowling balls and told the employee who was drilling the finger holes into the bowling balls that "My wife would like to have `his' and `hers' [engraved] on the balls."
 {¶ 18} The appellant then called Ralph Harris, who lived across the street from Spencer. He first met Harmon while he was cutting Spencer's lawn in 1989. Through their conversations, Harmon advised Harris that he and Spencer were married.
 {¶ 19} Irene Harris testified that in 1989, she was also introduced to Harmon as Spencer's husband, that Harmon referred to Spencer as his wife, and that both Harmon and Spencer continued to refer to each other as husband and wife throughout their entire relationship.
 {¶ 20} The appellant then testified that Harmon moved into her house in 1989 with the intention of being husband and wife, but without the actual ceremony since Harmon felt that a marriage license was just a piece of paper. The couple lived together as husband and wife from 1989 until 1997, when Harmon moved out. During this period of time, both parties represented themselves to their families and to those in their community, and to each other, as being married.
 {¶ 21} Additionally, Spencer submitted several greeting cards given to her from Harmon, as well as cards sent to the couple from family members and friends, including a birthday card given to Spencer from Harmon in 1989, which read: "For My Wife on Her Birthday, Today, Tomorrow — With All My Love Today, Tomorrow and Always;" a Christmas card from Harmon to Spencer in 1989, which read: "For My Wife, A Loving Christmas Message;" another card which stated: "With all my love and then some, Sam;" and in 1990, Harmon gave Spencer a Christmas card which stated: "For My Wife. I'm So in Love With You." In 1994, Harmon's brother and sister in St. Louis, Missouri, sent a Christmas card addressed to "Sam and Hartents Harmon." Additional undated greeting cards from Harmon to Spencer were presented into evidence, all referring to Spencer as his wife and all professing his love to her.
 {¶ 22} The appellant further testified that in 1989, she attempted to add Harmon, as her husband, to her health insurance policy through her employer; however, according to Spencer, her employer would not allow it because the government did not recognize common law marriages. Appellant also removed her children as the beneficiaries of her insurance policies and named Harmon as her new beneficiary.
 {¶ 23} The trial court found that after July 1990, the obstacle preventing Spencer from including Harmon in her health insurance policy could have been removed by entering into a ceremonial marriage, however, the parties choose not to do so. The trial court inferred that this failure suggests the absence of the requisite present intent to be husband and wife. However, the principles of common law marriage are based on the parties acting as husband and wife without going through thegovernmental requirement of obtaining a license, followed by the optionalceremonial marriage. Thus, if two parties enter into a common law marriage, they have decided not to marry according to governmental policy, but rather to live and act as a married couple under the common law without the need for a "ceremonial marriage."
 {¶ 24} As found in the record, Spencer testified she felt they were husband and wife before she found out that Harmon was still, in fact, married to someone else. They had never attempted to be ceremonially married before Harmon's divorce from his first wife; therefore, this court cannot view their continuation of acting as husband and wife as somewhat less persuasive because they did not decide to have a ceremonial marriage after Harmon was divorced from his first wife.
 {¶ 25} The party seeking to establish the existence of a common law marriage must prove each element by clear and convincing evidence. "Clear and convincing evidence is that degree of proof which produces in the mind of the trier of fact `a firm belief or conviction as to the allegations sought to be established.'" Brooks v. Brooks (Apr. 30, 2001), Cuyahoga App. No. CA2000-08-079, 2001 Ohio App., citing Cork v.Bray (1990), 52 Ohio St.3d 35, 38.
 {¶ 26} Under the facts of the case sub judice, the appellant has properly set forth clear and convincing evidence that an agreement in praesenti to marry existed. The evidence presented established that both parties continually held themselves out as husband and wife, both before and after the appellee was formally divorced from his prior wife. The trial court heard evidence from witnesses attesting that the two referred to each other as husband and wife throughout their entire cohabitation. In addition, the community, as well as the parties' own families, viewed Spencer and Harmon as a married couple. In addition, there was no evidence presented to demonstrate that either of the parties ever corrected anyone for calling them husband and wife.
 {¶ 27} Therefore, the trial court abused its discretion in dismissing the appellant's complaint for divorce.
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., concurs.
ANN DYKE, J., DISSENTS WITH SEPARATE DISSENTING OPINION ATTACHED.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).